UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-81252-Cannon/McCabe

GROUNDHOG ENTERPRISES, INC. d/b/a
MERCHANT LYNX SERVICES,

      Plaintiff,

v.

CRAIG DEVLIN and FREEDOM EDGE
LLC,

      Defendants.

                                     /

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Plaintiff's Motion for Default Final Judgment, which was referred to the undersigned by United States District Judge Aileen M. Cannon. (DE 29, DE 30). For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED** and that a Default Final Judgment be entered as set forth below.

### I.    BACKGROUND

#### A.    The Complaint

This is a business dispute involving a sales agreement in the credit card processing industry. Plaintiff is in the business of providing credit card processing services to "merchants," which consist of retail stores and other outlets that accept credit cards from retail customers. (DE 1 ¶ 14). On September 10, 2021, Plaintiff entered into a contract (the "Representative Agreement") with Defendant Freedom Edge, LLC ("Freedom Edge"), whereby Freedom Edge agreed to market and sell Plaintiff's services to merchants. (DE 1 ¶ 18, DE 1-1 at 7-10 (¶ 7(a)). In exchange, Freedom Edge would receive periodic residual commissions for each merchant boarded with Plaintiff for

payment processing services.  (DE 1 ¶ 19, DE 1-1 at 10-11 (¶ 9(a)).  Defendant Craig Devlin is the sole owner of Freedom Edge.  (DE 1 ¶ 17).

In connection with the Representative Agreement, Plaintiff provided Freedom Edge with confidential information, such as merchant agreements, processing volumes, revenues, and profitability.  (DE 1 ¶¶ 21, 26, 35).  Freedom Edge agreed to maintain as confidential and not use such information during the term of the contract and five years thereafter.  (DE 1 ¶ 21, DE 1-1 at 12 (¶ 12)).  As part of the Representative Agreement, Freedom Edge also agreed not to solicit any of Plaintiff's merchants during the term of the contract and five years thereafter.  (DE 1 ¶ 35, DE 1-1 at 11-12 (¶¶ 11(a), 12 (a)).  Upon a breach of the non-solicitation obligation, Freedom Edge agreed to pay liquidated damages to Plaintiff in the amount of $10,000 per merchant, or the preceding 36 months of residuals attributable to each such merchant, whichever was greater.  (DE 1-1 at 12 (¶ 11(b)).

In 2025, a dispute erupted between the parties concerning residual commissions due under the Representative Agreement.  (DE 1 ¶ 23).  Thereafter, on June 13, 2025, Plaintiff, Freedom Edge, and Devlin entered into an agreement (the "Settlement Agreement") to resolve their dispute.  (DE 1 ¶ 24, DE 29-1 at 32-33).  Under the Settlement Agreement, Plaintiff agreed to pay $175,000 to Freedom Edge (the "Settlement Payment").  (DE 29-1 at 32 (¶ 1)).  The parties also agreed to re-affirm the non-solicitation provisions of the Representative Agreement and, in the event of a breach, to a refund of the $175,000 Settlement Payment as follows:

> Non-Solicitation.  All accounts that Freedom Edge boarded with [Plaintiff] prior to the Effective Date shall be owned solely by [Plaintiff], and the obligations set forth in Section 11 of the Representative Agreement are in full force and effect.  Further, in the event that Freedom Edge breaches Section 11 of the Representative Agreement, in addition to the damages set forth in Section 11(b) of the Representative Agreement, he shall immediately return the Settlement Payment to [Plaintiff]. …

(DE 29-1 at 32 (¶ 6)).

Beginning in September 2025, Freedom Edge and Devlin repeatedly used Plaintiff's confidential information, in whole or in part, to target, solicit and influence the most highly profitable merchants to move away from Plaintiff, in blatant breach of both the non-solicitation and confidentiality covenants set forth in the Representative Agreement and Settlement Agreement. (DE 1 ¶¶ 25-27). As a result of this conduct, Plaintiff lost its most valuable merchants. (DE 1 ¶ 30).

Based on these allegations, Plaintiff brings the following claims:

| Count | Claim | Defendant |
|---|---|---|
| 1 | Breach of the Representative Agreement | Freedom Edge |
| 2 | Breach of the Settlement Agreement | Freedom Edge Devlin |
| 3 | Violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 | Freedom Edge Devlin |
| 4 | Violation of Florida's Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 | Freedom Edge Devlin |
| 5 | Tortious Interference with Contract and Business Relationships | Freedom Edge Devlin |

(DE 1).

B.      The Default

After filing the lawsuit, Plaintiff attempted service on Freedom Edge and Devlin multiple times with no success. (DE 12, DE 14, DE 15). On January 16, 2026, the District Judge issued an order deeming both Defendants served via the substitute service provisions of Fla. Stat. § 48.161. (DE 16). The District Judge ordered Defendants to respond to the Complaint by February

16, 2026. (DE 16). Defendants did not respond. As a result, the Clerk of Court entered a default against both Defendants on February 17, 2026. (DE 19). This motion followed. (DE 29).

## II. LEGAL STANDARD

By way of this motion, Plaintiff seeks entry of a default final judgment against both Defendants pursuant to Fed. R. Civ. P. 55(b)(2). Courts follow a two-step process in resolving such motions. First, a district court "must ensure that the well-pleaded allegations in the complaint … actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). This review is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

Second, a district court must determine the damages to be awarded and, if necessary, "may conduct hearings" for that purpose. Fed. R. Civ. P. 55(b)(2)(B). A court need not hold a hearing, however, when the amount of damages requested is "a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## III. DISCUSSION

The Court will address each step of the two-step process in turn.

### A. Sufficiency of the Complaint

First, the Court has reviewed the Complaint and finds it sufficient to survive a motion to dismiss as to all claims, apart from the Count 2 claim against Devlin for breach of the Settlement Agreement. By way of that claim, Plaintiff seeks to hold both Freedom Edge and Devlin responsible for returning the $175,000 Settlement Payment. (DE 1 ¶ 49). As set forth below, the Court finds that Count 2 states a plausible claim for relief against Freedom Edge, but not against Devlin.

To state a claim for breach of contract under Florida law, a plaintiff must allege facts that show (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). As applied here, Plaintiff seeks to hold both Defendants liable for a breach of ¶ 6 of the Settlement Agreement, which requires a return of the $175,000 Settlement Payment upon certain triggering events. (DE 1 ¶¶ 46-49).

At the outset, the Settlement Agreement makes clear that Plaintiff paid the Settlement Payment to Freedom Edge, not to Devlin:

> Settlement Consideration. As good and valuable consideration for the covenants agreed to releasees provided by Freedom Edge and Devlin, [Plaintiff] *agrees to pay Freedom Edge* one hundred and seventy-five thousand dollars and zero cents ($175,000.00) ….

(DE 29-1 at 32 (¶ 1)) (emphasis added). The Settlement Agreement thereafter incorporates the non-solicitation provisions of the Representative Agreement and requires a "return" of the Settlement Payment in the event of a breach of those provisions, as follows:

> Non-Solicitation. All accounts that Freedom Edge boarded with [Plaintiff] prior to the Effective Date shall be owned solely by [Plaintiff], and the obligations set forth in Section 11 of the Representative Agreement are in full force and effect. Further, in the event that Freedom Edge breaches Section 11 of the Representative Agreement, in addition to the damages set forth in Section 11(b) of the Representative Agreement, *he shall immediately return the Settlement Payment to [Plaintiff]*. …

(DE 29-1 at 32 (¶ 6)) (emphasis added).

As noted, ¶ 6 imposes the repayment obligation on someone or something represented by the pronoun "he." Applying ordinary rules of contract construction, the Court reaches two conclusions about this pronoun. First, because "he" is a singular pronoun, it can have only one

antecedent.  Accordingly, the Settlement Agreement cannot be read to impose the repayment obligation on *both* Freedom Edge and Devlin; it must be one or the other.

Second, after construing the contract as a whole, the Court finds that the antecedent is Freedom Edge, not Devlin.  The Court reaches this conclusion for two reasons.  First, "Freedom Edge" appears in the preceding clause of the same sentence that uses the pronoun, thereby making Freedom Edge the most logical antecedent.  Second, the sentence at issue requires the antecedent to "immediately return" the Settlement Payment.  Under the Settlement Agreement, Devlin did not receive the Settlement Payment, making it impossible for him to "return" it.  Instead, as set forth in ¶ 1, Freedom Edge received the Settlement Payment, again making Freedom Edge the most logical antecedent of the pronoun "he" as used in ¶ 6.

For all of these reasons, the Court finds that Count 2 states a plausible claim for relief against Freedom Edge, but not against Devlin.  As to the remaining claims in the Complaint, the Court has reviewed the elements for each cause of action alleged and has made a comparison to the allegations of the Complaint.  Based on that comparison, the Court finds that the Complaint alleges sufficient facts to make out a plausible claim for relief in Counts 1, 3, 4, and 5.  As such, the Court finds a sufficient basis for entry of a default final judgment on these claims for purposes of Eleventh Circuit caselaw.

### B.    Damages

The Court must next assess damages.  On a motion for default final judgment, a plaintiff may satisfy its burden to prove damages through affidavits and supporting documentation.  *See Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (noting that damages may be established through "a hearing or a demonstration by detailed affidavits establishing the necessary facts").  Here, the Court finds that Plaintiff has satisfied its

burden with affidavits and supporting material, such that the Court need not conduct an evidentiary hearing on damages.

Plaintiff seeks three categories of damages, each of which the Court will address in turn.

### 1.      Liquidated Damages

First, as to Count 1, Plaintiff seeks to recover liquidated damages pursuant to ¶ 11(b) of the Representative Agreement, which provides as follows:

> Upon a breach by Representative or its Affiliates of Section 11(a) hereof, Representative hereby agrees to pay damages to Company as follows: *(i) per Merchant, the greater of $10,000 or the preceding 36 months of Residuals attributable to such Merchant;* and (ii) per employee or agent, the greater of $10,000 or the preceding 36 months of commissions or salaries related to this Agreement.  Representative acknowledges and agrees that it would be extremely difficult or impracticable to fix the actual damages resulting from Representative's breach of Section 11(a) hereof, and therefore, Representative shall pay such damages not as a penalty, but as a reasonable estimate of the loss actually sustained by Company as a result of said breach. The damages payable to Company under this Section 11(b) shall be without prejudice to the rights of Company to exercise any other rights or remedies available to Company under this Agreement or under applicable Law.

(DE 1-1 at ¶ 11(b)) (emphasis added).  In support of this request, Plaintiff has provided the Court with evidence that Freedom Edge solicited and diverted 297 merchant accounts in breach of the Representative Agreement.  (DE 29-1 ¶¶ 35-40).  Plaintiff therefore seeks $2,970,000 in liquidated damages (297 merchants × $10,000 per merchant).

Under Florida law, a liquidated damages clause cannot be enforced unless it satisfies two requirements: "First, the damages consequent upon a breach must not be readily ascertainable. Second, the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages." *Lefemine v. Baron*, 573 So. 2d 326, 328 (Fla. 1991).

The Court has reviewed the evidence submitted and finds that Plaintiff has satisfied both requirements.  As to the first requirement, Plaintiff has provided the Court with an affidavit verifying that damages were not readily ascertainable at the time the parties entered into the Representative Agreement.  (DE 32-1 ¶¶ 9–10).  As to the second requirement, Plaintiff has provided the Court with an affidavit verifying that the liquidated damage sum is not grossly disproportionate to the actual damages sustained.  (DE 32-1 ¶¶ 11-15).  To the contrary, the liquidated sum conservatively estimates the actual damages stemming from a lost merchant account.  (DE 32 at 5, DE 32-1 ¶¶ 14-15).  For all of these reasons, the Court finds that liquidated damages should be awarded against Freedom Edge in the amount of $2,970,000.  These damages apply only to Count 1 and only to Freedom Edge.

### 2.    Return of Settlement Payment

Next, as to Count 2, Plaintiff seeks a refund of the $175,000 Settlement Payment paid to Freedom Edge under the Settlement Agreement.  (DE 29 at 10).  The Court has reviewed the evidence submitted and finds that Plaintiff has proven these damages.  The evidence shows that Plaintiff paid the $175,000 Settlement Payment to Freedom Edge.  (DE 29-1 ¶ 22, DE 29-1 at 32 (¶ 1)).  By defaulting, Freedom Edge admitted that it breached the terms of the non-solicitation provisions, which were incorporated into the Settlement Agreement.  Pursuant to ¶ 6 of the Settlement Agreement, Freedom Edge must now return the Settlement Payment to Plaintiff.  For all of these reasons, the Court finds that damages should be awarded against Freedom Edge in the amount of $175,000.  These damages apply only to Count 2 and only to Freedom Edge.

### 3.    Actual Damages

Next, as to Count 5, Plaintiff seeks compensatory damages arising from the loss of 297 merchant accounts.  (DE 1 at 19).  In support, Plaintiff has submitted affidavits and other materials

concerning the value of the merchant accounts and the loss of net income arising from the loss of such accounts.  (DE 29-1, DE 32-1).  Although Plaintiff could have supported a greater damage number, Plaintiff has agreed to limit its damages to $10,000 per lost merchant, i.e., the same amount set forth in the liquidated damages provision discussed above.  (DE 32 at 5, DE 32-1 ¶¶ 14-15).  Plaintiff therefore seeks total compensatory damages of $2,970,000 (297 merchants × $10,000 per merchant).

The Court has reviewed the evidence submitted and finds that Plaintiff has proven these damages.  As stated, the evidence shows that Plaintiff lost 297 merchant accounts.  (DE 29-1 at 35-40).  By defaulting, Freedom Edge and Devlin admitted that Plaintiff lost these accounts due to Freedom Edge's and Devlin's misappropriation of trade secrets and tortious interference with contract and business relationships.

The evidence shows that each merchant account serviced by Plaintiff generates approximately $342.50 per month in net residual income, meaning residual income remaining each month after deduction of the expenses associated with the account.  (DE 32-1 at 3-4).  In the payment processing industry, merchant account residual streams are routinely bought and sold in residual buyout transactions, priced as a multiple of monthly residual income, with prevailing market multiples of approximately 40 to 60 times monthly residuals — a convention in place in and around September 2021.  (DE 32-1 at 4).  Applying the customary multiple, the market value of Plaintiff's average merchant account would be approximately $13,700 to $20,550 ($342.50 multiplied by a multiple of 40 to 60).

By limiting its damage request to only $10,000 per merchant, Plaintiff therefore requests a damage number lower than the amount proven by way of its affidavits and evidence.  Accordingly, the Court finds that compensatory damages should be awarded, as to Counts 3, 4, and 5, against

Freedom Edge and Devlin in the amount of $2,970,000 (297 merchants × $10,000 per merchant). These damages apply to both Defendants.  To the extent these damages overlap with Count 1 damages, of course, Plaintiff may not obtain a "double recovery" for the same injury.  *See St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1203 (11th Cir. 2009) (noting that "no duplicating recovery of damages for the same injury may be had").  As such, Plaintiff should be awarded a total of $2,970,000 against Freedom Edge and Devlin, jointly and severally.

### C.      Permanent Injunction

Finally, Plaintiff also seeks a permanent injunction against both Defendants.  (DE 29 at 14-16).  The DTSA and the FUTSA authorize private litigants to seek injunctive relief to prevent the actual or threatened misappropriation of trade secrets.  *See* 18 U.S.C. § 1836(b)(3)(A); Fla. Stat. § 688.003.   To warrant injunctive relief, a plaintiff must show (1) irreparable injury, (2) the inadequacy of legal remedies, (3) that the balance of hardships favors equitable relief, and (4) that the public interest would not be disserved by the issuance of an injunction.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).  An injunction must be narrowly tailored to address the proven misconduct and restrain no more conduct than reasonably necessary.  *Fin. Info. Techs., LLC v. iControl Sys. USA, LLC*, 21 F.4th 1267, 1279 (11th Cir. 2021).

By defaulting, Defendants have admitted the underlying facts necessary for entry of a permanent injunction.  Accordingly, the Court finds that a permanent injunction should be issued as part of the default final judgment as set forth below.  *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("Injunctive relief is available in the default judgment setting."); *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1302 (S.D. Fla. 2016) (entering permanent injunction in a motion for default judgment).

10

## IV.    <u>RECOMMENDATION & NOTICE OF RIGHT TO OBJECT</u>

For the reasons stated above, the undersigned **RECOMMENDS** that the motion (DE 29) be **GRANTED.**  The District Judge should enter a default final judgment as follows:

1.      Plaintiff should be awarded $2,970,000 against Freedom Edge, LLC and Craig Devlin, jointly and severally, plus post-judgment interest at the statutory rate.

2.      Plaintiff should be awarded an additional $175,000 solely against Freedom Edge, LLC, plus post-judgment interest at the statutory rate.

3.      Freedom Edge, LLC and Craig Devlin should be permanently enjoined from further breaches of the Representative Agreement and misappropriation of Plaintiff's trade secrets, including, but not limited to, enjoining Freedom Edge, LLC  and its officers, directors, employees, agents, representatives, subsidiaries, and all persons acting in concert with it, from unlawfully soliciting Plaintiff's accounts, and from misappropriating, using, and disclosing Plaintiff's confidential information.

4.      Freedom Edge, LLC and Craig Devlin should be permanently enjoined from further breaches of the Settlement Agreement and misappropriation of Plaintiff's trade secrets, including, but not limited to, enjoining Freedom Edge, LLC and its officers, directors, employees, agents, representatives, subsidiaries, and all persons acting in concert with it, from unlawfully soliciting Plaintiff's accounts, and from misappropriating, using, and disclosing Plaintiff's confidential information.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de

novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 26th day of June 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE